Statement of the case.

## No. 2418.

### JIM SPEARS *v.* THE STATE.

1. ACCOMPLICE TESTIMONY—CHARGE OF THE COURT.—With respect to the testimony of a State's witness, the trial court charged the jury as follows: "In contemplation of our law with reference to accomplice testimony, the court charges you that John Thomas, the witness introduced by the State, is an accomplice with the defendant," etc.. *Held:* Error, because the said charge was tantamount to an instruction to the jury that defendant was guilty as well as Thomas. The charge should have instructed the jury that the witness Thomas was an accomplice in the commission of the offense, and that the defendant could not be convicted upon the testimony of Thomas unless it was legally corroborated.
2. FENCE CUTTING—INDICTMENT.—See the statement of the case for the charging part of an indictment *held* sufficient to charge the offense of fence cutting.

APPEAL from the District Court of Milam. Tried below before the Hon. J. N. Henderson.

The charging part of the indictment reads as follows: "* * * that Jade Parker, Bud Milam, Julius Thompson, Henry Jackson, Sam McLaughlin, Mat Milam, Jack Spears and Jim Spears, late of the county of Milam, on the thirtieth day of March, in the year of our Lord 1887, with force and arms, in the county of Milam, and State of Texas, did then and there wantonly and willfully, and without the consent of W. S. Carothers, the owner, and with intent to injure the said *S.* W. S. Carothers, cut, injure and destroy a fence there situate, said fence being then the property of said W. S. Carothers, and not the property of said Jade Parker, Bud Milam, Julius Thompson, Henry Jackson, Sam McLaughlin, Mat Milam, Jack Spears and Jim Spears, or either of them; and that the said Jade Parker, Bud Milam, Julius Thompson, Henry Jackson, Sam McLaughlin, Mat Milam, Jac Spears and Jack Spears, nor either of them, did not then and there own or reside upon land enclosed by said fence; against the peace and dignity of the State." The penalty assessed against the appellant, who was alone upon trial, was a term of two years in the penitentiary.

The disposition of this appeal, upon the questions involved, does not call for a statement of the facts proved.

*E. L. Anthony*, for the appellant: This indictment is bad, and the motion to quash the same should have been sustained, first, because it is duplicitous; second, because it does not allege that appellant did not reside on or own land inclosed by said fence; and, third, because it is ambiguous in stating the name of the owner of the fence—or, in other words, it charges the ownership in W. S. Carothers, and the intent to injure S. W. S. Carothers, different persons, so far as we know.

As to the first proposition, if we use that great and artful dodge invented by ingenious courts in the long ago, to aid incompetent district attorneys in the performance of their official duties, and say that certain parts of the charging part of this indictment may be rejected as surplusage, then we can reject the language "without the consent of W. S. Carothers, the owner thereof," and we might have a good indictment under article 648*a*, Willson's Penal Code, with a penalty affixed at not less than one nor more than five years. But, "reversing the engine," and rejecting all the charging part of the indictment as surplusage except "did then and there," * * * "without the consent of W. S. Carothers, the owner," * * * "injure" * * * "a fence there situate, said fence being then the property of W. S. Carothers, and not the property of Jim Spears," it would then be a good indictment under article 684, Willson's Penal Code, with a penalty of not less than ten nor more than one hundred dollars, and, in addition thereto, imprisonment in the county jail for not exceeding one year.

This court, in Roberts v. The State, 17 Texas Court of Appeals, 148, has held that article 684*a* did not repeal article 684. Then we have, by rejecting as surplusage one part, one offense, and by another part another offense, under different statutes with different penalties. It therefore would not come under the rule announced in Nicholas v. The State, 23 Texas Court of Appeals, 326, but would come under the opposite rule as announced in The State v. Dorsette, 21 Texas, 656, which is the true rule.

How can the court tell which part to reject as surplusage? Will you make it a good indictment for the misdemeanor (Art. 684), or will you make it a good indictment under 684*a*, for the felony, with the tail end of the exception in the enacting clause of the statute lopped off? Duke v. The State, 42 Texas, 455, says that the exceptions in the enacting clause must be negatived in the indictment, and this court adheres to the rule. Now, does it mean that the pleader must negative the entire excep-

tion or only a part of it, and as to this appellant, Jim Spears, it is not negatived at all. If the court would pretend to know which part of the indictment should be rejected as surplusage, it would certainly be reasonable, and would reject that part the rejection of which would leave a good indictment—a perfect one. In such case it could only have it charging an offense under article 684, a misdemeanor, of which the district court would not have jurisdiction; and the trial must be set aside and the indictment transferred to the proper court (county court.) Or if the court should reject allegations to make it a felony (Art. 684a) indictment, it would be a very sorry indictment.

Second. The exception in article 684a is not negatived as to Jim Spears. The indictment does not read that "the said defendants nor either of them did not reside," etc., but undertakes to name and designated by name which of the defendants did not reside, etc., upon the enclosed land, and does name such as did not reside within the enclosure, but as to appellant Jim Spears *nil dicit*. Now, can it be claimed that, as to appellant, Duke v. The State, supra, has been followed? I should say not. *Ergo*, it is bad.

Again, *all* of the exception is not negatived. Perhaps some part of the exception is contingently immaterial, in view of the other part being stated as to the other defendants, *not* this appellant, though. Still, however immaterial, in the particular case at bar, as a matter of good pleading *the whole* of the exception must be negatived, and that too as to appellant. (Duke v. The State, supra.)

Again: The indictment is bad, inasmuch as it does not allege an intent to injure "W. S. Carothers, the owner," but alleges an intent to injure another and a different person than the owner, viz : "*S*. W. S. Carothers." Now, this court holds that middle initials of names do not make any difference in the allegations of names of persons, and that it is the first initial and the surname which make the name of the party. Now, rejecting middle initials as immaterial, we have as the owner W. Carothers, while the person intended to be injured was S. Carothers. The intent to injure the owner is a material element of the offense, and the variance between the owner's name and that of the person injured or intended to be injured is fatal. We therefore, firmly believe that the indictment is fatally defective on these grounds, or is good only for a misdemeanor under article 684, and in either case the court ought to set aside the conviction and

remand the case for a new trial. (Code Crim. Proc., arts. 420, 421, 425; Willson's Texas Crim. Laws, secs. 684, 684a; Dorsette v. The State, 21 Texas, 656; Nicholas v. The State, 23 Texas Ct. App., 326; Bish. Crim. Proc., sec. 436.)

The court erred in its general charge to the jury that John Thomas is an accomplice with the defendant; which was, in effect, telling the jury that the defendant cut the fence, and thus placing the fact prominently before the jury that John Thomas was to be given full credit; it being a charge upon the weight of evidence and on the credibility of the witness.

The trial judge is required by the spirit of the law, not only not to state a positive opinion as to the weight of the evidence, or to positively discuss the facts, but it also requires him to avoid even the appearance of an intimation as to the facts, and to so guard the language of his charge that no inference, however remote or obscure, may be drawn by the jury as to the facts in evidence from the charge as given them, which is made the law of the case; and if the objectionable clause is excepted to at the trial, it must necessarily reverse the case.

The court charged the jury as follows: "In contemplation of our law with reference to accomplice testimony, the court charges you that John Thomas, the witness introduced by the State, is an accomplice with the defendant, and before you can convict the defendant, his testimony is to be corroborated as above required." Throughout the entire charge this same idea prevails. The clause quoted was specially excepted to at the time, and a bill of exceptions was reserved.

The court in its charge tells the jury what constitutes a principal and what constitutes an accomplice; tells them that the testimony of an accomplice must be corroborated, and gives them to generally understand that the testimony of an accomplice is by law required to be corroborated by other evidence tending to connect the defendant with the commission of the offense charged, before they can convict upon an accomplice's testimony.

But throughout the whole charge of the court prominently stands out in bold relief before the jury the idea contained in the clause quoted, namely, that the witness and the defendant cut the fence. The language used can mean no less, namely: "The witness John Thomas is an accomplice with the defendant." The court here tells the jury in substance that the witness John Thomas and defendant cut the fence; there is no doubt

about that; but, because the law requires Thomas to be corrobo-rated, you must look for additional evidence, but you need not trouble about Thomas, as he has told you the truth. For this formality of corroboration required by law you need only look! Such is the effect of the language of the court in this charge. In other words, it withdraws from the jury the right of the jury to pass upon the credibility of Thomas, and the weight to be given his testimony, and intimates very strongly to the jury the opin-ion of the court that appellant did cut the fence, as charged. No other construction can possibly be placed upon the language. It is true that near the end of the court's charge it tells the jury that they are the exclusive judges of the weight of the evidence, and the credibility of the witnesses, but this does not remove the the court's intimation as to weight and credibility. It is there. It pervades the whole charge. It can not be shaken off. And may, might, or could not the jury have drawn a conclusion of the court's opinion? Then it was error, reserved and excepted to at the time, and must reverse the case. (Code Crim. Proc. arts. 677, 685; Stieckie's case, 7 Texas Ct. App., 174; Maddox's case, 2 Id., 404; same case, 12 Id., 434.)

*W. L. Davidson*, Assistant Attorney General, for the State.

WILLSON, JUDGE. In instructing the jury in relation to the testimony of a State's witness, the court used the following lan-guage: "In contemplation of our law with reference to accom-plice testimony, the court charges you that John Thomas, the witness introduced by the State, is an accomplice with the de-fendant," etc. This portion of the charge was excepted to by the defendant, and is presented for our revision by proper bill of exception.

It is manifest that the court erred in giving such charge. It explicitly tells the jury that the witness Thomas is an accom-plice *with the defendant.* This was equivalent to telling the jury that the defendant was criminally connected with the offense charged against him. Thomas, in his testimony, confessed his own guilt of the offense; that he was a principal in the commission of the offense. Therefore, to instruct the jury that Thomas was an accomplice *with the defendant,* was to instruct that the de-fendant was equally guilty with Thomas. The instruction should have been that the witness Thomas was an accomplice in the commission of the offense charged, and that a conviction upon

his testimony, unless corroborated, etc., would not be warranted. The vital issue in the case was the participancy of the defendant in the commission of the offense. The above quoted paragraph of the charge determines that issue against the defendant, indirectly but plainly, because the witness Thomas could not have been an *accomplice with the defendant* in the commission of the offense without the defendant's being also *particeps criminis.* Because of this erroneous charge, the judgment must be reversed and the cause remanded for another trial. (Stieckey v. The State, 7 Texas Ct. App., 174; Maddox v. The State, 2 Texas Ct. App., 404; same case, 12 Texas Ct. App., 434.)

In our opinion the indictment is a good one. It is not subject to the objection of duplicity urged against it. Nor does it fail to sufficiently negative the exceptions contained in the statutory definition of the offense. Other objections made to the indictment are, we think, hypercritical and without substantial merit.

It is unnecessary that we should determine the correctness of the ruling of the court in refusing defendant's application for a continuance. With respect to other errors assigned and insisted upon, we also deem it unnecessary that we should express an opinion. Because of the erroneous charge above specified, the judgment is reversed and the cause is remanded.

*Reversed and remanded.*

Opinion delivered January 25, 1888,